In re:

Appeal from the decision of the General Supervisor of Elections in session of December 7, 1959, regarding amendments to Rules for Determining the Validity of Transfer Applications.

No. 7. Decided: January 19, 1960.

*Carmelo J. Gorritz, Acting General Supervisor of Elections*, appellee. *Luis A. Archilla Laugier* representative in the Commonwealth Board of Elections of the Puerto Rican Independence Party, appellant. *Samuel R. Quiñones* representative in the Commonwealth Board of Elections of the Popular Democratic Party; *Leopoldo Figueroa* representative in the Commonwealth Board of Elections of the Republican Statehood Party.

MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

In the regular session of the Commonwealth Board of Elections corresponding to December 7, 1959, the Acting General Supervisor of Elections submitted the following question to the Board:

"To submit to the consideration of the Board for Amendments or Modifications in the Rules for Transfer Applications.

"In the proceeding for revision of transfer applications I have found that, pursuant to the rules there are limitations in the discretion that could be modified upon considering certain unforeseen situations, as for example:

"1. A voter who failed to put the name of the precinct where he lives at present but instead put the barrio or street 'where I live,' which can be identified if it said 'Pájaros Americanos,'

is readily understood that it refers to the precinct of Bayamón, since that barrio exists only in Bayamón and in no other municipality of Puerto Rico. We believe that a case like that should be admitted if the Board approves it.

"2. Other cases, persons who [*failed*] to put the time they have resided in the new precinct of their residence. We believe it is unnecessary because since the time requirement for elections is one year, one day or less would suffice at the time of filling and swearing the transfer application.

"Respectfully submitted to the consideration of the Commonwealth Board of Elections by the Acting General Supervisor of Elections."

The Supervisor's proposal tended to modify Rules 2 and 3 of a set of rules approved by the Commonwealth Board of Elections on November 9, 1959, effective on the 17th of the same month and year, as a guiding standard in the examination and determination of the validity of the applications for transfer of registration of voters from the precinct or municipality where they appear registered to the precinct or municipality of their new residence, pursuant to the provisions of § 27 (c) of the Election Law in force.[1]

The Supervisor's proposal was submitted to a vote but it did not receive the unanimous vote of the members of the Board representing the political parties, for which reason, pursuant to the provisions of paragraph 4 of § 12 of the Election Law,[2] the Supervisor decided the question,

---

[1] Aforesaid Rules 2 and 3 read as follows:

"2. The transference *is void* if it does not state therein the precinct where the voter has his residence at present.

"3. The transference *is void* if it does not state therein the time that the voter has lived in the precinct of his new residence."

[2] Paragraph 4 of the afore-cited § 12 provides the following:

"All resolutions of the Commonwealth Board of Elections shall, to be effective and valid, be adopted by the unanimous vote of the members of said Board representing the political parties, and present at the voting. Any matter submitted for the consideration of said Board on which the vote is not unanimous, shall be decided, for or against, by the General Supervisor of Elections, whose decision shall be deemed as the decision of the Commonwealth Board of Elections and may be appealed by any member of said Commonwealth Board of Elections representing a political party, in the manner prescribed in section 19 of this title."

his decision being favorable to the adoption of the amendments proposed to the said rules.

The representative of the Puerto Rican Independence Party in the Commonwealth Board of Elections appealed from said decision before the Chief Justice of the Supreme Court, in accordance with the provisions of paragraph 4 of the afore-cited § 12 and of § 13(d) of the Election Law in force.[3]

The appellant bases the present appeal [4] on the fact that § 27(c) of the Election Law, upon providing that "Any voter who, having voted in the immediately preceding general election in a precinct or municipality changes his residence to another precinct or municipality, need not register again as a voter in the precinct or municipality of his new residence, but it will suffice for voting in the said precinct or municipality of his new residence, that he request from the General Supervisor of Elections the transfer of his registration from the precinct or municipality where he voted in the immediately preceding general election to the precinct or municipality of his new residence, upon a sworn application setting forth (1) the precinct where his registration appears; (2) the precinct or municipality where his new residence is established; (3) his residence at the time of requesting the transfer, naming the barrio and any possible identification of the house or farm where he lives, if in the rural district,

---

[3] The afore-cited § 13(d) provides in its pertinent part:

"Section 13d.—The appeal from any decision of the General Supervisor of Elections made in accordance with the provisions of paragraph 4 of section 12 hereof, shall be taken to the Chief Justice of the Supreme Court of Puerto Rico. The appeal shall be made in writing, and express the findings of fact and issues of law thereof. . . .

" .　　.　　.　　.　　.　　.　　.　　.

" . . . All appeals to the Chief Justice of the Supreme Court from a decision of the General Supervisor of Elections shall be taken at the same meeting where the decision appealed from is made, and before the said meeting is adjourned."

[4] On December 19 the record of appeal was completed pursuant to our decision of the 11th of the same month.

·or the street and house number, if any, when residing in the urban district; (4) that he is a qualified voter, and that in the immediately following general election he shall have the right to vote in the said precinct or municipality of his new residence, and (5) the time he has been living in the precinct or municipality of his new residence" establishes requirements with which strict compliance must be had in order to exercise the right to a transfer of registration, and without which compliance a valid transfer can not be made, since the modification of said requirements is incumbent only on the Legislative Assembly and not on the Commonwealth Board of Elections or on the General Supervisor of Elections.

Section 27 (c) of the Election Law, as amended by Act No. 5 of September 6, 1955 (Spec. Sess. Laws, p. 32), provides that the applications for transfer of registration may only be made "on the year preceding that in which a general election is held, between the first day of July and the day in November starting from which there is one year to run until the eve of said election." [5] It likewise provides the following: "Immediately after receiving such petition the General Supervisor of Elections shall verify the circumstance that the voter applying for the transfer of his registration is registered in the precinct or municipality where he declared under oath to be registered, and if the said Supervisor of Elections finds that such is the case, he shall delete the name of said voter from the precinct or municipality where the latter was registered, and shall register the said voter in the precinct or municipality of the said voter's residence, or, that is, in the precinct or municipality where the voter requests to be registered. If the General Supervisor

---

[5] Prior to the amendment introduced to this section by Act No. 87 of June 20, 1955 (Sess. Laws, p. 348), the applications for transfer of registration had to be made between the *first of December* of the year preceding the election year and *March 20* of the election year. This section was again amended with regard to the term for filing the applications by Act No. 5 of September 6, 1955.

of Elections, when verifying the fact hereinbefore referred to, finds discrepancies therein, he shall investigate such circumstances as he may deem necessary to determine if the transfer is correct. But if it should follow from such investigation that any one of the offenses punishable by law has been committed, it shall be the duty of the General Supervisor of Elections to file information of the fact in the part of the Superior Court [formerly District Court] which includes the precinct or municipality where the petitioner declares under oath to be registered, for the proper prosecution of the offenders. Any person voluntarily, wilfully and maliciously applying for the transfer of his registration under this clause (c), knowing that he is not entitled to such transfer, shall be guilty of a felony and shall, upon conviction thereof, be punished by imprisonment in the Penitentiary for a minimum term of one (1) year. The General Supervisor of Elections shall, with all the transfer petitions received by him under this clause (c), prepare a list of each precinct, by barrios and in strict alphabetical order, on the basis of the precinct or municipality from which the application for the transfer of the registration is made; and shall prepare another list for each precinct, by barrios, in strict alphabetical order, on the basis of the precinct or municipality to which the transfer or the registration applied for is made, and the voters appearing on this second list may be excluded according to the procedure established in sections 78, 79, 81, and 82 of this title."

I

Since there is no text for fixing the scope of the amendments challenged here other than that appearing from the proposal of the Supervisor previously copied, its scope should be fixed in the light of the limitations which arise from its own terms and from the examples given in said proposal.

The first situation raised by the Supervisor must be understood as directed to remedy only the voter's omission to fill, in his transfer application under oath, the blank corresponding to the subdivision which says "Precinct where I have my residence at present," having expressed in the subdivision which says "barrio or street where I live" the name of the *barrio* in which he lives, there being no other barrio by that name in any other precinct or municipality in Puerto Rico, and only in the precinct whose name was omitted in said subdivision.[6]

It must not be understood that the Supervisor proposed the acceptance of the transfer if the voter stated in the blank corresponding to the subdivision that says "barrio or street where I live," only the name of a *street*, and not of a *barrio* which existed in only one precinct or municipality in Puerto Rico, since the example with which he illustrated his proposal is based on the *barrio*, which is the election unit of the pre-

---

[6] As the representative of the Republican Statehood Party in the Commonwealth Board of Elections correctly points out, if the voter has omitted to state in the proper subdivision of his application that the precinct where he has his residence at present is that of Dorado, but indicates in the proper blank that he *lives* in barrio *Higuillar*, since there is no other barrio by that same name in any precinct or municipality of Puerto Rico except in the municipality or precinct of Dorado, his transfer is assigned to the precinct of Dorado, and his name is deleted from the precinct where he was registered and voted in the immediately preceding election.

The Supervisor's proposal does not accept, however, the voter's transfer to the precinct of Dorado if the voter states that the barrio where he lives at the time of swearing his application is barrio *Espinosa*, because there is another barrio by the same name in the precinct of Vega Alta, and another one in the precinct of Dorado, or that the barrio where he lives is barrio *Río Lajas*, because there is another barrio of the same name in the precinct of Toa Alta, according to the election registries.

Neither does he accept the transfer if the barrio where the voter states he lives is that of *Collores* because there are barrios by that name, according to the election registries, in the precincts of Humacao, Juana Díaz, Jayuya, Las Piedras, Orocovis and Yauco; or if the barrio which he indicates is that of *Rincón*, because there are barrios by that name, as elections units, in the precincts of Cayey, Cidra, Gurabo and Sabana Grande, aside from the fact that Rincón is also a precinct in itself corresponding to the municipality of the same name.

cincts, according to law, and not the streets. The reference to the "street" made by the Supervisor in his proposal when he says that the voter "put the barrio or street 'where I live'" only tends to identify the subdivision of the sworn application to which he is referring but it does not determine the sufficiency of the information given by the voter about the precinct of his new residence on the basis of the mere reference to a street.

The second situation stated by the Supervisor is directed to remedy the voter's failure to fill, in his transfer application, only the blank corresponding to the subdivision that says "Time I have resided in the municipality," referring to the precinct of his new residence, at the time when he swore his application.

## II

■ In both situations the voter failed to give information required by law. But the purpose of the law is clear: that the Supervisor may, with the facts furnished by the voter and the entries in the election registries, determine that the transfer is correct if the latter, on election day, possesses the legal qualifications to vote therein. As to the Supervisor, the question is reduced to examining whether, irrespective of his powers and duties of verification and investigation, he is in a position to determine, with the facts furnished by the voter, that the transfer is correct, and whether the omission of one of the facts required by law defeats the voter's right to have his name appear in the "registration transfer lists," notwithstanding the fact that the Supervisor might reach, with the data furnished and the records in his power, in the zealous performance of his duties, the determination that said transfer is correct.

■■ There exists no legal provision on this matter that declares void a transfer application in which the voter fails to state one of the informative facts enumerated in the Act. Since the laws regulating the exercise of the right to vote

should be interpreted liberally in favor of that fundamental right of the citizen, it can not be inferred, in absence of such express provision, that an omission which does not cause the Supervisor to doubt the voter's qualifications—because from the rest of the facts stated in the application and the other proof in the election registries he may accurately establish the correctness and origin of said transfer—will render the application insufficient and deprive the voter of his right to have his name appear in the "registration transfer lists" of the precinct of his new residence; which registration upon being transferred is subject to the procedure of exclusion, on the grounds established by the Act itself in its §§ 29, 30, 31, 32 and 32(a) for the voters appearing in said lists, as well as in the "provisional registration lists" and in the "lists of the voters registered in the election year." Under such circumstances the voter has established *prima facie* his right to the transfer and he can not be deprived of that right without due process of law.

In the first situation stated by the Supervisor—the voter's failure to state the *precinct* of his new residence but his inclusion of the *barrio* "where I live," at the time of making his application, there being only one barrio in Puerto Rico by that name—the application complies substantially with the statute, since the *barrio* being by law the election unit of the precincts, and there being no possibility that the transfer be made to a precinct other than that where the voter resides, the Supervisor has sufficient information in the application on that point to determine, based on his own election registries, that the transfer is correct.

In the second situation the voter's failure to state the time he has lived in the precinct of his new residence does not render the application insufficient either.

The period within which a voter whose name appears in the "provisional registration lists" (because he voted in the

immediately preceding election) should request his transfer from the precinct in which he appears registered to another precinct, because of change of residence, is fixed by § 27 (c) of the Election Law, as amended by Act No. 5 of September 6, 1955, between the first of July and the day in November *starting from which there is one year to run until the eve* of elections. Consequently, a voter who requests his transfer within said period, but fails to state in his sworn application the time he has lived in the place of his new residence, shall have, on election day, more than one year of residence in the precinct to which his registration is transferred, which is one of the requirements for voting therein.

When the period fixed by the Act for making such applications was between the *first of December of the year preceding* the election year and *March 20 of the election year* (according to the Election Law before the first amendment introduced in § 27 (c) by Act No. 87 of June 20, 1955) an application in which the voter failed to state the time he had lived in the precinct of his new residence was insufficient for the Supervisor to authorize the transfer, since such omission produced uncertainty as to whether the voter fulfilled the requirement of one year's residence in the new precinct on election day, because although he made his request on the first day of the term fixed therefor—first of December of the year preceding the election year—the year would have never expired by election day.

■ The issue arises because when Act No. 87 of June 20, 1955 (which fixed the period for requesting transfers between the *first of July* and *October 31 of the year preceding* the election year) and Act No. 5 of September 6, 1955 (which is the Act in force) amended § 27 (c) the Legislature left in force, with regard to the information that the voter was required to give in his transfer application, the same facts enumerated in the Act prior to said amendments. The problem, however, is one of sufficiency of the application with

regard to the qualifications that the person requesting the transfer might have on election day in order to vote in the precinct of his new residence. Because of the change made in the Act as to the period fixed for presenting the transfer application, the voter's omission to state the time he has lived in the precinct of his new residence is no longer a fatal omission, since it will always be more than one year on election day, thereby complying with one of the requirements for the transfer, for in order to be a qualified voter and be able to vote in the new precinct the voter must have one year or more of residence therein.

■ The multiple guarantees against fraud contained in the Act in force regulating elections and registrations, among others: the fact that the voter whose transfer is made to the precinct of his new residence deletes his name from the precinct where he voted in the immediately preceding election; that copies of the lists of voters deleted from the precinct in which they were registered, by barrios and in strict alphabetical order and of the lists of voters transferred to the precinct of their new residence made in equal form, are sent to the chairmen of all political parties, including the chairmen of the local committees of the parties in the appertaining precincts as well as to the representatives of the parties in the Commonwealth Board of Elections; that these lists are posted to the public in visible places by the respective local board and that the persons appearing thereon are subject to the procedure of exclusion provided by law; that the voter who does not possess the legal qualifications may be challenged even at the time of voting; and bearing in mind that the law does not establish any procedure whatever by virtue of which a voter whose transfer is not accepted may obtain the judicial review of that adverse determination, compel us to reach the inevitable conclusion—in view of the nature of the right exercised by the citizen—that when there is on his part a substantial compliance with the law and

the omission of a fact in his application does not cause the Supervisor to have any uncertainty or take any risk whatever in determining that the transfer is correct, his right to vote should not perish.

## III

■ The power and the function to carry out the transfer of registration of voters from one precinct or municipality to another precinct or municipality belong exclusively—as the representative of the Popular Democratic Party in the Commonwealth Board of Elections correctly sets forth in his brief—to the General Supervisor of Elections and not to the Commonwealth Board. There is nothing in § 27(c) of the Election Law granting authority to the Commonwealth Board of Elections to interfere with the power and function vested by law in the Supervisor to determine the correctness of the transfer requested, by verifying or investigating the fact that the voter is registered in the precinct or municipality in which he swears to be registered, or such other circumstances as the Supervisor "may deem necessary to determine if the transfer is correct." For that he can make use of the registry book of electors provided by law, for each precinct, in which they appear by barrios and by alphabetical order of surnames, in accordance with the dates of their respective registrations and their personal circumstances and address of every person registered as an elector in a precinct or municipality; as well as of the file, classified by municipalities, precincts and barrios, in alphabetical order, of all the petitions of registration, each of which shall have attached the original certificate of registration corresponding thereto and other documents related to the exclusion and the re-registration of the same elector, if there is any.

Paragraph 3 of § 4 of Article VI of the Constitution of the Commonwealth of Puerto Rico provides that "all matters concerning the electoral process, registration of voters, political parties and candidates shall be determined by law."

Section 12 of the Election Law in force provides that "the Commonwealth Board of Elections shall have charge of the supervision and direction of the elections in Puerto Rico, said supervision and direction to be carried out under this subtitle and under such rules and regulations as the Board may adopt, provided they are not in conflict with the provisions hereof. In order that such rules and regulations may have the force and effect of law, they shall be approved by the Governor and promulgated by the Secretary of State of Puerto Rico. . . ." [7] Within the scope of its authority the Commonwealth Board of Elections may also, pursuant to § 28 of the Election Law, as amended, issue regulations for the revision and correction of the election lists but said regulations shall "to be effective and valid, be approved by the Governor and promulgated by the Secretary of State of Puerto Rico, and such regulations shall at no time contain provisions which in any manner result in the cancellation or invalidation of the legal registration of a voter, or in depriving him of his right to vote, or in excluding him from the list of voters, except upon an order of a court of competent jurisdiction. . . ."

 Notwithstanding the full powers granted by the law to the Commonwealth Board of Elections to inspect and supervise the elections in Puerto Rico, it is through the law and the rules and regulations which it may adopt pursuant to the law that it exercises its power, without its being an appellate court from the General Supervisor of Elections in matters of transfers of registration, as the representative of the Popular Democratic Party in said Board also points out. It is on the Supervisor of Elections on whom the law places the duty to determine the correctness of the transfer requested by exercising its authority to verify and investi-

---

[7] Section 4 of the Registration Law in force contains the same provisions with regard to the supervision and inspection of the Commonwealth Board of Elections concerning the registration of new voters.

gate the circumstances which he may consider necessary for such purposes, bearing in mind, of course, the pertinent provisions of the Act as well as the nature and essence of the right exercised by the voter requesting his transfer, and the duty to protect that right if he determines that the transfer is correct.

■ Since the determination of the correctness of transfers—which as we have indicated, the law reserves for the Supervisor as such—does not fall within the field of action of the Commonwealth Board of Elections and since we are not here dealing with a resolution of the Board in the exercise of its power to adopt rules or regulations with the Governor's approval, the Supervisor's decision adopting the amendments proposed by him to the Board in the absence of the unanimous vote of the members representing the political parties, is not the Board's decision mentioned in § 13 (d) of the Act, in relation to paragraph 4 of § 12, as the decision appealable to the Chief Justice of the Supreme Court.

Consequently, I believe that the appeal should be dismissed, as it is hereby dismissed.

(Sgd.) LUIS NEGRÓN FERNÁNDEZ
Chief Justice

I attest:

(Sgd.) IGNACIO RIVERA
Secretary